UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:15CV-P128-TBR

ADRIAN DARYL BROWN                                                                    PLAINTIFF

v.

DEANDRE HARMON                                                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Adrian Daryl Brown filed the instant *pro se* 42 U.S.C. § 1983 action proceeding *in forma pauperis*. This matter is before the Court on the initial review of the action pursuant to 28 U.S.C. § 1915A. Upon initial review, for the reasons set forth herein, the Court will dismiss the action.

**I. SUMMARY OF ALLEGATIONS**

Plaintiff currently is incarcerated at the Fulton County Detention Center. His complaint arises out of his previous incarceration as a convicted inmate at the Hickman County Detention Center (HCDC). He sues Deandre Harmon, whom he identifies as a deputy jailer at HCDC, in his official capacity only.

Plaintiff states that on April 8, 2015, he had "an issue about my laundry" and tried to get the attention of the person in the control room. He reports that he kicked the door to try to get the guards' attention. He states that Defendant showed up with another non-Defendant deputy and Plaintiff told them about his issue. According to the complaint, the deputies told him that "what was taken was contraband and it didn't matter, I asked if they placed it in my property and they said no, they asked if this was going to continue to be a problem and I said yes because it was still my property." Plaintiff maintains that the deputies asked him to step out of his cell several times and that he refused. He states that Defendant pulled out his pepper spray and tried

to spray him "so I moved out of the way and jumped up off of my bed, he rushed at me and tried to restrain me and I continued to resist." He states, "We ended up between the bed and the toilet with my back against the wall and the other deputy Danny Cobb pulled out his spray and sprayed me in the face at this point I stopped resisting . . . ." He asserts that Defendant "placed him in handcuffs, he then took me out of the cell and into the dayroom and placed me against the first door leading out of the entire dorm." Plaintiff states, "As he placed me against the door . . . he took his right hand and pushed hard against the back of my head and made my face smack against the glass of the door." As relief, Plaintiff seeks punitive damages only.

## II. STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

### III.  ANALYSIS

The Court construes the complaint as alleging a claim of excessive force in violation of the Eighth Amendment's Cruel and Unusual Punishments Clause against Defendant.  However, Plaintiff sues Defendant in his official capacity only.  "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  Suing employees in their official capacities is the equivalent of suing their employer, in this case Hickman County.  *See Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues:  (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation.  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).  The Court will first address the second issue, *i.e.*, whether the municipality is responsible for the alleged constitutional violation.  A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.  *Monell*, 436 U.S. at 694;

*Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993).  Simply stated, "a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'"  *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)).  The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983."  *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Upon review of the complaint, Plaintiff has not alleged that Defendant acted pursuant to a municipal policy or custom with respect to the alleged incident.  Plaintiff's complaint appears to allege an isolated event affecting only him.  *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible.").  Accordingly, Plaintiff's official-capacity claim of excessive force against Defendant will be dismissed for failure to state a claim upon which relief may be granted.

Moreover, Plaintiff's claim for punitive damages against Defendant in his official capacity must be dismissed because "a municipality is immune from punitive damages under 42 U.S.C. § 1983."  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see also Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 818-19 (6th Cir. 2007) ("[T]he district court found the municipalities immune to punitive damages claims and properly granted summary judgment on Plaintiffs' claims for punitive damages against Defendants

4

Springboro and Clearcreek on that basis."). Therefore, Plaintiff cannot recover punitive damages from Defendant in his official capacity.

Moreover, even if Plaintiff had sued Defendant in his individual capacity, the claim would still be subject to dismissal for failure to state a claim. The complaint essentially alleges two incidents of force by Defendant. The first incident occurred after Defendant refused to step out of his cell after being ordered to do so several times and Defendant took out his pepper spray. Plaintiff states as follows:

> so I moved out of the way and jumped up off of my bed, he rushed at me and tried to restrain me and I continued to resist. We ended up between the bed and the toilet with my back against the wall and the other deputy Danny Cobb pulled out his spray and sprayed me in the face at this point I stopped resisting.

Plaintiff describes the second alleged use of force by Defendant as follows: "As [Defendant] placed me against the door . . . he took his right hand and pushed hard against the back of my head and made my face smack against the glass of the door."

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Id.* at 9. Of course, not "every malevolent touch by a prison guard gives rise to a federal cause of action," *id.*, and "*de minimis* uses of physical force" do not support a constitutional claim "provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Id.* at 10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Furthermore, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of

policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

In evaluating an excessive-force claim, the Court should consider the extent of injury suffered by an inmate in determining whether the use of force was wanton and unnecessary, although "[t]he absence of serious injury . . . does not end [the inquiry]." *Hudson v. McMillian*, 503 U.S. at 7. Other relevant factors in evaluating an excessive-force claim include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. at 321).

Plaintiff states repeatedly that he refused the commands made by the deputy jailers. With regard to the first alleged use of force by Defendant, it is evident on the face of the complaint that Plaintiff was resisting and that the force was used to gain control of Plaintiff and not used "maliciously and sadistically to cause harm." *Id.* at 6-7. With regard to the second alleged use of force, Plaintiff alleges no injury. Because of Plaintiff's repeated refusals to comply with the deputy jailers and the lack of any injury alleged on the face of complaint, the Court concludes that the second alleged use of force was a *de minimis* use of force that does not give rise to a constitutional claim. *See id.* at 10; *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.") (citing *Hudson*, 503 U.S. at 9). Therefore, had Plaintiff sued Defendant in his individual capacity, the claim would have been dismissed for failure to state a claim.

The Court will enter a separate Order of dismissal for the reasons stated herein.

Date:

cc: Plaintiff, *pro se*
 Defendant
 Hickman County Attorney
4413.010